UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

------------------------------------------------------------ x
                                         :

IN RE:                                     :      Chapter 11

VESTA INSURANCE GROUP, INC.,      :      Case No.: 06-02517-TBB11
and J. GORDON GAINES, INC.,        :      Jointly Administered

            Debtors.                     :      Judge Thomas B. Bennett

------------------------------------------------------------ x

**OBJECTION OF WILMINGTON TRUST COMPANY TO
CONFIRMATION OF THE DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION**

**COMES NOW** Wilmington Trust Company ("Wilmington Trust"), in its capacity as Successor Indenture Trustee, Successor Property Trustee, Successor Guarantee Trustee, Successor Paying Agent, Registrar and Transfer Agent and Successor Delaware Trustee with respect to the Indenture dated as of January 31, 1997 (as amended and/or supplemented, the "Indenture") pursuant to which Vesta Insurance Group, Inc. (the "Debtor") issued its 8.525% Junior Subordinated Deferrable Interest Debentures, by and through its undersigned counsel, respectfully submits this Objection to confirmation of the Debtor's Second Amended Plan of Liquidation (the "Plan") and represents as follows:[1]

**Preliminary Statement**

1.      Wilmington Trust has several concerns and issues with respect to certain provisions contained in the Plan and post-effective date structure and process as well as the overall confirmability of the Plan. As will be set forth below, Wilmington Trust does not believe that the Plan can be confirmed pursuant to Section 1129 of the Bankruptcy Code. Wilmington Trust is also concerned that the Plan may impair any claims Wilmington Trust or its holders may

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed in the Plan.

NYC/311021.1

have against U.S. Bank or the senior debt. In addition, Wilmington Trust attempted to reach out to the Debtor and the other parties in an effort to reach a consensual resolution with respect to various outstanding issues and concerns, however, as of the date of the filing of this Objection, no resolution was reached. As such, Wilmington Trust files this Objection in order to preserve its rights pending the conclusion of these proceedings and reserves its right to address such issues and concerns at the hearing to consider confirmation of the Plan (the "Confirmation Hearing").[2]

2. Wilmington Trust files this Objection in furtherance of its concerns about the Plan itself as well as the ability of the Debtor to confirm and effectuate the Plan, and the viability of the post-confirmation structure and process.

**Background**

3. On July 8, 2006, Wyatt R. Haskell, Luther S. Pate, IV and Costa Brava, Partnership III, L.P. filed an involuntary petition for relief under Chapter 7 of Title 11, United States Code against the Debtor. On August 7, 2006, the Debtor filed a motion (the "Conversion Motion") to convert the involuntary case to a voluntary Chapter 11 case. On August 8, 2006, the Court granted the Conversion Motion.

4. On August 30, 2006, the Court entered an order appointing the members of the Official Committee of Unsecured Creditors (the "Committee"). On August 31, 2006, the Court entered an amended order appointing members of the Committee. Wilmington Trust is a

---

[2] On November 6, 2006, Wilmington Trust filed a Limited Objection to Approval of the Debtor's Disclosure Statement, to advise the Court that there were outstanding issues and concerns with respect to the Debtor's proposed Plan and Disclosure Statement, which included comments to the Plan which the Debtor did not include. As confirmed at the hearing to consider the Disclosure Statement, Wilmington Trust determined to defer these issues until the Plan confirmation, with the expectation that the Debtor would incorporate these comments, or at a minimum provide Wilmington Trust with a satisfactory explanation as to why the comments were not included. Notwithstanding repeated requests, the Debtor ignored Wilmington Trust.

member of the Committee.

5. On November 9, 2006, this Court held a hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing").

**Objection**

6. Wilmington Trust has requested changes to the Plan and other information to insure the solvency and viability of the Plan structure. Comments were provided to the Debtor, the Committee and U.S. Bank, yet as of the date of the filing of this Objection, a number of significant comments and issues raised by Wilmington Trust have not been resolved. Wilmington Trust's requests for the draft form of confirmation order to review and provide comments to the Debtor have been ignored.

A. The Plan Cannot be Confirmed Because it is Not in the Best Interests of Creditors

7. Section 1129(a) provides, in relevant part:

> (7) The court shall confirm a plan only if all of the following requirements are met:
>
> * * * * *
>
> With respect to each impaired class of claims or interests –
> (A) each holder of a claim or interest of such class –
> (i) has accepted the plan; or
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; . . .

11 U.S.C. § 1129(a)(7)(A).

8. "The 'best interests' test applies to individual creditors holding impaired claims,

even if the class as a whole votes to accept the plan." *Bank of America National Trust and Savings Assn v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 442 n.13 (1999).

9. Here, the Plan is not in the best interests of creditors, as the general unsecured creditors will receive less than they would receive in a liquidation in Chapter 7. Although, as in Chapter 7, the Plan anticipates liquidating the estate's assets to repay its creditors, the Plan is swathed in layers of administrative costs, including the compensation and reimbursement of the Plan Trustee and any professionals that the Plan Trustee hires, that will significantly reduce the distribution that unsecured creditors would otherwise receive on their claims.

10. Article 7.4 of the Plan provides for the Plan Trustee to facilitate the liquidation and distribution under the Plan. Article 7.5 of the Plan provides for compensation of the Plan Trustee, as well as any professionals hired by the Plan Trustee to assist him. The Plan further provides that the "payment of fees and expenses of the Plan Trustee and any Post-Confirmation Professional retained by the Plan Trustee, as well as the retention by the Plan Trustee of Post-Confirmation Professionals, shall be made in the ordinary course of business and *shall not be subject to the prior approval of the Bankruptcy Court.…*" (emphasis added). *See* Plan at ¶ 7.5. Unless a party-in-interest objects to the fees and expenses, no hearing will be held on the fees and/or expenses, and even if an objection is filed, the objection specifically does not defer payment. *See* Plan at ¶ 7.5. Fees and expenses of a Chapter 7 Trustee, on the other hand, are subject to Bankruptcy Court approval prior to their payment, and as such the estate would not incur the expense of disgorging fees if the fees are later determined to be unreasonable and not allowable.

11. Here, there is no indication in the Plan of the amount that will be set for

Case 06-02517-TBB11    Doc 573    Filed 12/18/06    Entered 12/18/06 16:00:18    Desc
Main Document    Page 4 of 11

compensation for the Plan Trustee or the Plan Trustee's professionals, nor has this amount been capped in the Plan. The Plan merely indicates that the Plan Trustee "shall be compensated from available funds in the estate" and that the terms of the Plan Trustee's compensation will be "negotiated with the Committee and filed with the Bankruptcy Court not later than five (5) Business Days prior to the hearing on confirmation of this Plan."[3] A Chapter 7 Trustee, on the other hand, would be paid only a percentage of the fees recovered for the benefit of the estate, and if no funds were recovered for the estate, the Chapter 7 Trustee would not be compensated. The Chapter 7 Trustee is therefore incentivized to obtain the maximum amount for each estate asset, and will not be compensated for time spent unproductively.

12. Similarly, as a Chapter 7 Trustee would be compensated according to the amount recovered for the estate, and not according to the time spent on the actual liquidation, a Chapter 7 Trustee would have a strong incentive to maximize the value of the assets over the shortest possible period of time, thus resulting in a faster distribution for creditors. However, Article 7.5 of the Plan actually creates a perverse incentive for the Plan Trustee to take the full year permitted under the Plan to liquidate the estate. Additionally, the Plan provides no counter incentive for the Plan Trustee to maximize the value of the estate's assets, as the Plan Trustee's compensation is not tied to the value recovered for the estate.

13. The Plan further provides in Article 9.11 that estate assets with an original cost value equal to or less than $10,000.00 can be abandoned without any notice. A Chapter 7 Trustee, on the other hand, would have a strong incentive to sell anything of value in the estate to maximize his own compensation.

---

[3] As of the time of the filing of this Objection, the retention agreement of the Plan Trustee has not been filed.

14. The roughly $5 million currently held by the estate will presumably be used, at least in part, to pay the initial fees and expenses of the Plan Trustee and any professionals retained by the Plan Trustee. There is no guarantee that the Plan Trustee will successfully liquidate the estate's assets, however, and be able to return these funds to general unsecured creditors – the true stakeholders of this case. In a Chapter 7 liquidation, this money would stay in the estate until the close of the case, accruing interest, and would only be distributed thereafter to the estate's creditors, potentially increasing the recovery of the general unsecured creditors.

15. Finally, in apparent recognition of the fact that the Plan does not meet the requirements of Section 1129(a)(7)(A), the Debtor did not even bother to include a liquidation analysis in its Plan or related documents to show the amount it believes the estate will recover through its Plan. Without a liquidation analysis, it is unclear how, or even if, the Debtor determined that the Plan complies with the requirements of Section 1129(a)(7)(A). Similarly, it is unclear how the Court would make this determination. Case law clearly indicates that a judgment based on Section 1129(a)(7)(A) must be based on evidence, not assumptions. *Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 252 B.R. 373, 390 n.79 (E.D. Tex. 2000), citing *Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990). The *Southern Pacific* Court went on to state that "[a] plan obviously cannot be confirmed if there is insufficient evidentiary basis to determine that it is in the best interest of creditors." *Id.* at 391. As the Debtor has provided no evidence indicating that the Plan meets the requirements of Section 1129(a)(7)(A), the Plan cannot be confirmed.

16. The liquidation of the estate assets proposed in the Plan may be more expeditiously and inexpensively accomplished through Chapter 7, under the guidance of a Chapter 7 Trustee. The Disclosure Statement did not indicate what the likely distribution will be

(if any) for holders of general unsecured claims, likely because until the assets are liquidated there is no way to make this determination. Because any recovery to unsecured creditors depends solely upon the proceeds recovered in the proposed liquidation proceeds, the Plan should provide that the liquidation must occur as quickly and inexpensively as is possible with a structured timeline in place. The Plan proposed by the Debtor may not accomplish this, whereas a liquidation under Chapter 7 would guarantee that if any amount can be recovered for general unsecured claim holders, it will be so recovered. As such, the Plan is not in the best interests of the creditors of this estate and should not be confirmed.

B.   The Plan is Not Feasible

17.   Section 1129(a) provides, in relevant part:

> The court shall confirm a plan only if all of the following requirements are met:
>
> * * * * *
>
> (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

18.   "Although § 1129(a)(11) recognizes the possibility of liquidating plans, a planned liquidation does not create an exception to the feasibility requirement. Even liquidating plans must be feasible." *In re Holmes*, 301 B.R. 911, 914 (Bankr. M.D. Ga. 2003).

19.   In addition to the fact that the Plan is not in the best interest of creditors, the Plan is not feasible. As previously noted, no liquidation analysis was provided, nor is there any other indication as to what value can reasonably be attributed to or expected from the liquidation of the

estate's assets. It is therefore impossible to determine how much money will be brought into the estate to pay creditors' claims, or even whether the post-confirmation process will remain solvent. As such, that the Plan will result in *any* money to fund it is purely speculative, and there is no evidence that it can be successfully implemented. Merely providing for a liquidation does not make a plan feasible. *Cf.*, *Holmes*, 301 at 915.

20. In addition to concerns as to the feasibility of paying creditors' claims, the Plan raises additional issues as to how the Plan will finance the liquidation that it proposes to conduct under Chapter 11. The proposed liquidation of this estate through a Plan Trustee will cause the estate to incur significant expenses both for the Plan Trustee's fees and expenses and those of the professionals retained by the Plan Trustee, thus reducing any distribution to be received by the general unsecured creditors of the estate. However, the estate currently has only approximately $5 million, which may not even be sufficient to cover the administrative expenses of the estate. Any additional sums are based purely on the proposed liquidation, and are speculative at best. A Chapter 11 plan is not feasible unless it has a reasonable assurance of success. *Id.* at 915. A plan that offers no basis for its success, therefore, is unreasonable by its terms.

21. In the event the parties are unable to reach a consensual resolution with respect to these issues, and in the event more information is not provided to Wilmington Trust, Wilmington Trust respectfully requests that it be permitted to raise these issues before the Court at the Confirmation Hearing.

## Reservation of Rights

22. Wilmington Trust reserves its rights to further address the Plan and the proposed confirmation order and other ancillary issues either by further submission to the Court at oral

NYC/311021.1     8

Case 06-02517-TBB11    Doc 573    Filed 12/18/06    Entered 12/18/06 16:00:18    Desc
Main Document    Page 8 of 11

argument or testimony to be presented at the Confirmation Hearing, and defers such issues, to the extent that they are not satisfactorily resolved prior to the Confirmation Hearing, to the Confirmation Hearing.

### Conclusion

23. WHEREFORE, Wilmington Trust objects to confirmation of the Plan for the reasons set forth herein and respectfully requests that this Court grant such other, further and different relief as it deems just and proper.

This the 18th day of December, 2006.

|  | ARENT FOX PLLC |
|---|---|
| 1675 Broadway<br>New York, NY 10019<br>Telephone: (212) 484-3900<br>Facsimile: (212) 484-3990 | */s/ Andrew I. Silfen*<br>Andrew I. Silfen<br>Silfen.andrew@arentfox.com<br>Robert M. Hirsh<br>hirsh.robert@arentfox.com<br>Leah M. Eisenberg<br>Eisenberg.leah@arentfox.com<br><br>Counsel for Wilmington Trust Company<br><br>-AND- |
|  | NORMAN, WOOD, KENDRICK & TURNER |
| 505 Twentieth Street North<br>Birmingham, AL 35203<br>Telephone: (205) 328-6643<br>Facsimile: (205) 251-5479 | */s/ Mark P. Williams*<br>Mark P. Williams<br>mpwilliams@nwkt.com<br><br>Local Counsel for Wilmington Trust Company |

## CERTIFICATE OF SERVICE

      I, Leah M. Eisenberg, hereby certify that on December 18, 2006 caused a true and correct copy of the foregoing Objection of Wilmington Trust Company to be served via electronic mail upon the parties on the attached service list.

                                                  By:  */s/ Leah M. Eisenberg*

NYC/311021.1

# SERVICE LIST

Vesta Insurance Group, Inc.
J. Gordon Gaines, Inc.
3760 River Run Drive
Birmingham, AL 35243
dthornton@vesta.com
**Debtor**

C. Edward Dobbs, Esq.
Rufus T. Dorsey, Esq.
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, GA 30303
rtd@phrd.com
**Counsel to the Debtor**

Jim McWhinnie, Esq.
Damon Key Leong Kupchak Hastert
1600 Pauachi Tower
1001 Bishop Street
Honolulu, HI 96810-3480
jcm@hawaiilawyer.com
**Special Counsel to the Debtor**

W. Clark Watson, Esq.
Balch & Bingham
P O Box 306
Birmingham, AL 35201
cwatson@balch.com
**Special Counsel to the Debtor**

J. Thomas Corbett, Esq.
Office of the Bankruptcy Administrator
1800 5th Avenue North
Birmingham, AL 35203
Thomas_Corbett@alnba.uscourts.gov
**Office of the Bankruptcy Administrator**

R. Scott Williams, Esq.
Meredith Jowers Lees, Esq.
Latanishia D. Watters, Esq.
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
rsw@hsy.com
mjl@hsy.com
ldw@hsy.com
**Attorneys for the Unsecured Creditors' Committee**

Todd C. Meyers, Esq.
Colin M. Bernardino, Esq.
Kilpatrick Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
TMeyers@KilpatrickStockton.com
CBernardino@KilpatrickStockton.com
**Attorneys for the Unsecured Creditors' Committee**

Clark R. Hammond, Esq.
Johnston Barton Proctor & Powell LLP
2900 AmSouth/Harbert Plaza
1901 6th Avenue North
Birmingham, AL 35203
chammond@jbpp.com
**Counsel to Official Committee of Unsecured Creditors of J. Gordon Gaines, Inc.**

NYC/311021.1